## CONTINUATION OF APPLICATION FOR SEARCH WARRANT

I, Aaron Bartholomew, being duly sworn, depose and state the following:

### INTRODUCTION

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) assigned to the Grand Rapids Office. I have been employed by the FBI since 2009, and I have been assigned as a member of the Muskegon Safe Streets Task Force since 2014. As part of my duties, I investigate criminal violations of the federal drug trafficking laws. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. I have received training in the area of drug investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in investigations that have led to the issuance of search warrants involving violations of drug laws. These warrants involved the search of locations and property for evidence of drug trafficking, including: residences of targets, their associates, and relatives; smartphones; and computers.

2. Based on the information set forth below, there is probable cause to believe that evidence of violations of federal law, specifically, 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Controlled Substances), 18 U.S.C. § 922(g)(1) (Felon in Possession of Firearms), and 18 U.S.C. § 924(c) (Possession of Firearm in Furtherance of Drug Trafficking), will be found on the **Target Cell Phone**, which is

1

a white and silver Apple iPhone currently located at the Fillmore Complex of the Michigan State Police, described more fully in Attachment A. The categories of electronically stored information and evidence sought are described in Attachment B.

3. This Application requests the issuance of a warrant to examine the **Target Cell Phone**, which was seized on May 23, 2019, during the execution of a state-issued search warrant at the residence of RONALD STEVENS BUTLER III, 1440 Franklin St., Muskegon, Michigan, by detectives with the West Michigan Enforcement Team ("WEMET").

4. The **Target Cell Phone** is currently in the lawful possession the Michigan State Police ("MSP"), which is part of the Western Michigan Enforcement Task Force ("WEMET"). WEMET is a multi-jurisdictional law enforcement team that focuses on drug enforcement in Western Michigan, particularly in and around Muskegon County, Michigan. WEMET is comprised of law enforcement officers and personnel from numerous law enforcement departments including the Michigan State Police, the Muskegon Police Department, the Muskegon County Sheriff's Department, and the Norton Shores Police Department.

5. The **Target Cell Phone** came into the possession of MSP/WEMET in the following way: During the execution of a state-issued search warrant for a residence, namely 1440 Franklin St., Muskegon, Michigan, on May 23, 2019, for which the search warrant included "cell phones and contents of those cell phones," investigators recovered the **Target Cell Phone** from the kitchen table, where it was found near a plastic baggie containing 9.4 grams of suspected crack cocaine, a small

digital scale, $745 in U.S. currency, the driver's license of RONALD STEVENS BUTLER III, and a debit card bearing BUTLER's name.

6. Pursuant to the state-issued search warrant, MSP/WEMET downloaded and searched the contents of **Target Cell Phone**. Neither I, nor any other member of the FBI, has searched the **Target Cell Phone**. While MSP/WEMET might already have all necessary authority to examine the **Target Cell Phone** pursuant to the state-issued search warrant, I seek this additional federal warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

7. The **Target Cell Phone** has been in the custody of MSP/WEMET since the seizure on May 23, 2019. The **Target Cell Phone** has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of MSP/WEMET.

8. Based upon my training and experience, as well as the training and experience of other law enforcement officers with whom I regularly work, I understand the following about drug traffickers:

a) People engaged in drug trafficking frequently use cellular telephones to facilitate drug transactions. Cellular telephones are portable, and many mobile telecommunications service providers do not require purchasers of the devices to provide their names and/or addresses, so drug traffickers often use the devices in an effort to avoid detection by law enforcement.

b) Cellular phones often contain evidence indicative of drug trafficking including records of incoming and outgoing calls; text messages; emails, photographs of drugs, coconspirators, or currency; and, in the case of "smart phones," Global Positioning System (GPS) data indicating the location of the device at given points in time. Additionally, drug traffickers typically maintain and use multiple mobile phones to facilitate sales, and frequently switch phones to evade detection by law enforcement. Further, these types of devices are frequently used to access social media websites such as Facebook, Instagram, etc. Based on my training and experience, and the training and experience of other law enforcement agents, drug traffickers are using social media with increasing frequency to communicate with suppliers and purchasers of narcotics.

c) Persons who sell drugs will often keep documents, phone numbers of other drug dealers and phone numbers of their drug sources stored within their cellular telephones; and

d) Drug traffickers often take, or cause to be taken, photographs and videos of themselves, their associates, their property and/or their drugs, often storing them on their cellular telephones.

9. Based upon my training and experience, as well as the training and experience of other law enforcement officers with whom I regularly work, I understand that persons who illegally possess firearms often take, or cause to be taken, photographs and videos of these firearms, including, but not limited to, images and videos of themselves and/or their associates displaying, carrying, or brandishing

such firearms. Such photographs and videos are often stored on their cellular telephones.

10.     The information set forth in this continuation is based upon my personal knowledge and participation in the investigation described below, as well as information provided to me by other law enforcement officers. I have not set forth all of the information known to me or known to other law enforcement officers concerning this matter. This continuation is intended to show only that there is sufficient probable cause for the requested warrant.

## **PROBABLE CAUSE**

11.     On May 23, 2019, pursuant to a state-issued search warrant, WEMET detectives searched the residence of RONALD STEVENS BUTLER III, 1440 Franklin St. in Muskegon, Michigan. The search warrant allowed law enforcement to search the residence, as well as any outbuildings or vehicles on the premises, as well as "cell phones and the content of those cell phones," for evidence of drugs and drug trafficking,

12.     Upon first entering the residence for the search, a WEMET detective saw RONALD STEVENS BUTLER III get up from the kitchen table and run down the stairs to the basement. A short chase ensued. Two officers caught up to BUTLER seconds later and found him lying on the basement floor near the furnace and hot water heater. BUTLER was handcuffed. Aside from BUTLER and law enforcement

executing the search, there were no other people inside the residence at the time of the search.[1]

13. After BUTLER was in custody, an officer began searching the basement. The officer found a bag of suspected heroin under the laundry sink, near the basement wall. The drug, which was brown in color, was in the form of one large chunk, with a distinct, squared-off corner. From where BUTLER was found lying on the floor in the basement he could have readily thrown the bag of suspected heroin to the area under the laundry sink, which was less than 10 feet away.

14. Subsequent laboratory testing by the Michigan State Police Laboratory determined that the bag of suspected heroin contained 86.908 grams of fentanyl.

15. The search of the remainder of the residence and premises resulted in recovery of the following items:

    a. <u>Bedroom</u>: In the bedroom belonging to an adult (*i.e.*, with adult clothing and adult items),[2] investigators found: clothing items matching those worn by BUTLER in pictures posted on the Facebook page for "YBN RONDO"; a red plastic tote containing clothing and a piece of paper that appeared to be a receipt for $1,500, dated 5/4/18, bearing the name "Ron Butler"; $2,570 of U.S. currency in the top drawer of a wooden dresser; a mini digital scale and a Fifth/Third Mastercard in the name of "Ronald Butler III" in the top drawer of a plastic dresser; and male clothing in the closet, including a black coat with blue and gold stripes that had a plastic bag

---

[1] There were two individuals outside at the time of the search, on the premises of the residence, both of whom appeared to be cleaning the Chevrolet Impala in the driveway.

[2] A second bedroom in the house contained children's clothing and toys.

in the pocket containing two baggies: one containing 4 grams of suspected crack cocaine and one containing 1.5 grams of suspected heroin.

      b.    <u>Kitchen</u>: In the kitchen where BUTLER was sitting when officers first breached the door, investigators found on the table a clear corner-tied plastic baggie containing 9.4 grams of suspected crack cocaine; a small digital scale; $745 in U.S. currency; a white Apple iPhone, *i.e.*, the **Target Cell Phone**; BUTLER's Michigan driver's license; a debit card bearing BUTLER's name; and keys to the Chevrolet Impala parked in the driveway of the residence. On the stovetop in the kitchen investigators found two open boxes of plastic sandwich baggies, which are often used for packaging drugs, and one box of sandwich baggies with the corners cut off, a commonly used form of plastic baggies for drug packaging.

      c.    <u>Chevrolet Impala</u>: Law enforcement searched the Chevrolet Impala in the driveway pursuant to the search warrant. Underneath the driver's seat they found a Glock 40-caliber 23 semi-automatic pistol, with Serial Number #BDGA92, loaded with 12 rounds in the magazine. The firearm is listed as stolen in the Law Enforcement Information Network (LEIN), a statewide computerized information system of criminal justice information. Inside the glove box of the vehicle, law enforcement recovered an Enterprise rental car agreement for the Chevrolet Impala, in BUTLER's name. In the backseat of the car, law enforcement recovered school paperwork for BUTLER's elementary-school aged daughter.

16. Prior to May 23, 2018, BUTLER had the following felony convictions:

   a. On or about October 2, 2013, BUTLER was convicted in the 14th Circuit Court of Michigan, Muskegon County, case number 13-063946-FH, of felony delivery/ manufacture of marijuana, in violation of Michigan Compiled Laws § 333.7401(2)(d)(iii.), and was sentenced to a term of 15 months to four years in prison.

   b. On or about October 14, 2014, BUTLER was convicted in the 14th Circuit Court of Michigan, Muskegon County, case number 14-064983-FH, of delivery/ manufacture of a controlled substance—cocaine/heroin/other narcotic less than 50 grams, in violation of Michigan Compiled Laws § 333.7401(2)(a)(iv), and was sentenced to a term of 15 months to 20 years in person, to be served concurrently with the sentence in case number 13-063946-FH.

17. Based on the totality of the circumstances discussed above, and in light of my training and experience, as well as the training and experience of other law enforcement officers, I submit that there is probable cause to believe that the **Target Cell Phone** will contain evidence of drug trafficking. More specifically:

   a. There is probable cause to believe that the **Target Cell Phone** contains historical information concerning call activity; information stored in the phone's "phonebook" or "contacts" directory; stored voice-mails; emails; text messages; and electronic files; photographs; video images; and records of internet searches and transactions, that is evidence of violations of controlled substance laws

8

and federal firearms laws, and which is likely to reveal the identity of other suspects and/or witnesses.

      b.    There is probable cause to believe that a search of the **Target Cell Phone** will yield valuable information establishing a timeline of events preceding law enforcement's recovery of controlled substances and a firearm on May 23, 2019. I know from training and experience that call logs and text messages contain date and time stamps. A search of the **Target Cell Phone** will likely yield this evidence.

      c.    There is probable cause to believe that a search of the **Target Cell Phone** will yield evidence probative of the identity of the person who possessed the Target Device on May 23, 2019, which in turn will constitute evidence showing who possessed the controlled substances and stolen firearm that were recovered on May 23, 2019. Based on my training and experience, as well as the information set forth in paragraphs below, I know that cellular telephones such as the **Target Cell Phone** almost always contain some evidence probative of ownership/possession. This evidence includes, but is not limited to, the owner/possessor's name and/or telephone number; photographs of the owner/possessor, his property, residence, weapons, and/or associates; emails, text messages, or SMS messages containing the name, nickname, photographs, or other information indicative of the owner/possessor's identity; call records showing the persons with whom the owner/possessor communicated; and internet history showing access to email or social media accounts that would tend to identify the owner/possessor.

**TECHNICAL TERMS**

18. Based on my training and experience, I use the following technical terms to convey the following meanings:

  a. <u>Wireless telephone</u>: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

  b. <u>GPS</u>: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records and locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or

10

locations involved in such navigation. The GPS consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

19. Based on my training, experience, and research, I know that the **Target Cell Phone**, which is an Apple iPhone, is a wireless telephone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device. It also has a connection to the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. <u>Forensic evidence</u>: As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also

11

forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22.  <u>Nature of examination</u>: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.  <u>Manner of execution</u>: Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

24.  I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Cell Phone**, described in Attachment A to seek the items described in Attachment B.